Good morning, Your Honors. May it please the Court. The District Court ignored specific claim limitations directed to a specially designed dart machine and a series of method steps that allow a referee to monitor and enforce rules for a dart competition between players in remote locations from the referee or from each other. That was a task that was not possible with the existing dart machines prior to the technological advancements made in the 083 patent. As a result, the District Court erred in the following ways. Oversimplified the claims. Improperly determined facts against the non-movement, and this is a motion to dismiss. There was no fact discovery. There hasn't even been an answer filed in the case. He improperly concluded that the asserted claims do not recite something more than a mere abstract idea, and he improperly concluded that the asserted claims are directed to an abstract idea. Looking at the facts that the District Court, under Alice, whether a claimed element or not, is a question of fact. If a fact question exists, then it's improper to grant the motion to dismiss, and that's under the Seventh Circuit law. Where in the decision do you see the fact findings that you're referring to? He determined all of the recited components are generic in nature at Appendix 15 and 19. Concluded that the asserted claims recite the use of conventional components for their conventional purposes at Appendix 19 as well. Concluded that the process of remotely referring a game by collecting information, analyzing the information, and displaying results are routinely employed in other areas, including professional hockey, baseball, and football at Appendix 11. So looking at Claim 1, what in this is not routine and conventional components? So if you look at Claim 1, that's to the system, and the system requires the use of a dart machine, one or more dart machines, that have play components. Those are old, I don't contest those are old, those are simply the darts, the board, the machines to capture multimedia information related to conduct of play and performance of players using one or more of the dart machines. Those are the sensors that are on dart machines. Those are used in a conventional way. What's not here is at least one camera to capture the conduct of play. That is unique. It's not been done before. It's not been used in its conventional area. And the reason we say that is, there's nothing unconventional about the camera. No, but the camera has, I think, I argue that the camera has a special filter that allows it to do certain things in a variety of lights and in a bar. Did you invent that filter? We did not. It's not part of the plan. No, but we don't have to invent the components. What we have to do is if the combination of components that we use are inventive, then those are unique components. The Federal Circuit has repeatedly ruled that patents that use conventional components and combine them in a unique way, that's a patentable subject matter. But we've also routinely held that a combination of routine and conventional equipment used to implement an abstract idea is ineligible under ALICE. You have, and in most cases, in almost the majority of cases, those are the use of a standard computer running software. The wide majority of the cases that you find ineligible include the use of just a general purpose computer running software. Sure, but we've also done computers, the internet, computers with camera, I think is TLI. I mean, so it's not limited to abstract idea on a computer, it's abstract idea on routine conventional equipment. Right. And in, I'll use the ALICE case, there was no dispute that intermediate negotiation was a well-known, well-understood routine function that was known for centuries. There was no evidence in this case. Well, there's no dispute that that idea of intermediate negotiation was an abstract idea, and the only way they tried to make it patentable was to put that abstract idea on a computer. Isn't that your problem here, too, is you're trying to put the abstract idea of scoring, monitoring, and referring a dart game on conventional computer and camera equipment? No, I think what we are doing is permitting the, by the use of particular cameras, particular devices on a dart machine that weren't used previously to allow, and providing that information to a remote refereeing center, providing both the conduct of play and the multimedia information to a remote center which would allow a referee to remotely enforce the rules of a dart game. There is no evidence that remote refereeing itself is a long-standing routine act that has occurred. And there's... Do you think the idea of remote refereeing is patent eligible? I think the manner... So I'm going to claim that says, I claim a system for remote refereeing any type of sport wherein there's conventional equipment at the sport site that is used to transmit information to a third site, or a second site, where the referee sets and can make decisions. Is that a patentable, eligible idea under ALICE? Not if you don't, if you don't use specific or unique combinations of elements to get it there. If all you've done, like you've done in electric... I just said, a game site on whatever field, using cameras, you can add in some sensors if you want at the goal line, or home plate, or the baseline match on tennis, and then it's all transmitted over the internet to a second site where the referee sets. I don't think you could get that, and our claims don't cover that. Our claims are not written to cover all forms of remote refereeing. But this was a hypothetical. Okay. I would say that it depends on, it depends in your hypothetical on whether there was some unique way in which the devices were used to transmit the information, or they are collecting information that wasn't collected previously, then maybe. But what's not, what more is in your claims except for a remote monitoring or refereeing system? I mean, that's in the preamble to describe what your claims are, and then it adds in a bunch of conventional equipment to allow that to happen. We disagree that it's conventional. There is a dart machine that has a camera that captures the conduct of play. But you don't disagree that all the equipment you're using is conventional, I guess you're just arguing you've organized it in an unconventional manner. I don't think the camera itself is conventional. But it's not claimed to be a specific camera, your claims are correct. It is, it's a camera for capturing the conduct of play, and that means something when you read the specification, capturing the conduct of play. What all the prior art in this case did was, you had a camera that was an instant camera that took a picture of the player as a reward when he won the game. There was nothing done before with a camera that captured the player, the surroundings, the dartboard, and provided and captured all of the sensor information to show where the dart was, where it hit, where it was on the device, and then... But it's still the same non-unique camera, it's a conventional camera. I understand you're saying there's this filter on it, but it's still, you're using a camera to capture in one shot, so to speak, the totality of things. Right. That's just a conventional use of a camera. No, does a camera capture video? That's a conventional use. Our use is that the claims specifically require that it capture the conduct of play from beginning to end. If you read the spec, it says you're going to capture everything there. And the whole purpose of this is to prevent, is to allow refereeing in a remote location that captures the infringements of all the rules. If you only have a camera focused on the player, you miss the boundaries, you miss whether he's stepping over, you miss whether somebody's close to the dartboard and cheating and touching a dart there. That's what it was designed to capture. But let me ask you, in this case, though, is there anything unique? Has something been done to the camera internally, mechanically, that makes it uniquely suited to do these things that you've just described, catching the whole field of play? It is incorporated into the dart machine in a manner that captures all that and includes special filter, and I know your Honor argued that it's not in the claim, but it's in the specification, indicates that you can use a special filter to capture the images in all the lighting areas. So the combination, I guess what we're arguing about, you want to say every single element there is conventional. We don't think it is in the claimed element, because what else isn't conventional is the transmission of both the camera images captured and the multimedia. Nothing before has ever done that. Even the NFL and the baseball example and the hockey example that they give don't do that. They just have a video camera. Does your specification explain the kind of filter that you need to have in order to be able to capture the play, as you're describing to us, being so difficult to do? And I see the description in column four, line 64, wrapping around to column five, line three. It doesn't give specifics about the filter. No. If I'm missing something, please let me know. It doesn't. It simply says the filters can allow you to see it in different, various light sources. But I'll go back to the idea that you can't ignore the elements of the DART machine and the requirements for how the information is collected, because it's collected differently than it was done in the past. And you can't just say all this is... There was no cameras collecting the entire... There was nobody... There was no cameras that were collecting the entire field of play. As I said, the prior art that's described in our... Not in the preamble, in the beginning of the patent talks about an instant camera that only picked a picture of somebody when they won the game. So the combination of the camera and the multimedia information being sent to the remote location is new. It hasn't been done before. I see I'm into my rebuttal time. Yes. Would you like to say that? We'll hear from your friend on the other side now. I'd like to say that. Thank you, Your Honor. Good morning, Your Honor, and may it please the court. The district court got its analysis correct here. The 0A3 patent and the asserted claims are directed to the abstract idea of remote refereeing. This is collecting information, analyzing information, and then displaying that information, the referee's analysis. The asserted claims on their face teach this. This court has called these types of claims a familiar class of claims in the electric power. I guess what troubles me a little bit about this case is our kind of more recent Berkheimer decision, and where there's a factual dispute of whether something is routine and conventional or not. And I think Berkheimer is instructed here, because at Berkheimer, and that was at the second step of the Ellis inquiry, right, there was an abstract idea, and then at the second step we looked to, this court looked first to the specification, and found in the specification that there was at least a purported inventive concept. We don't have that here. The specification here does not... Well, I guess what your friend is arguing is that the inventive concept is nobody has ever come up with this particular combination of a dartboard, a computer, the internet, and a camera to transmit these images across the line. Why isn't that allegation that that combination is not routine and conventional enough to get to a factual dispute? Well, that's not what the specification is directed to, and it does not discuss that as being inventive, right? The specification and the claims, and frankly the title, is directed to this idea of remote camera was discussed as being in the prior art, and while the prior art is not great, but it's looking to that this already existed. There were dartboards that were interconnected with a network, whether or not that's an internet along a cellular network. So, the specification is not looking to... The specification of this patent is not looking to inventing a new way of connecting dartboards or a new way of connecting dartboards with a remote referee. The specification is directed toward this idea of a remote referee, and I think that's clear from the specification when it says that this is really the problem that's being solved is this remote refereeing problem. It's... And frankly, when you look at the claims, that's clear, the ideas to the claims, and then at the district court, I don't want to misspeak, but GALCO acknowledged that a lot of the technology was not new. You're right, it's a camera that's known. It's not a new camera. The camera with the... The district court's opinion referred to an admission at oral argument. What was that admission? So, this is at appendix 159 and 160. This is the district court's words. There is nothing, though, they do argue, erected. And do you admit there's no algorithm, no special machinery or technology that is involved there? And GALCO admitted, true, that's true. And then it went on to say, the court went on, but those are already invented cameras and so forth, and GALCO acknowledged, yes, that's true, those are invented cameras. And with regard to the cameras, with the filters and the... There's mention of lasers and things like that in the specification. As you mentioned earlier, that's not in the claims. Because this is directed to remote refereeing, which is an abstract idea of collection analysis and display... Where did the discussion, the district court in its opinion, talks about how there's remote refereeing in hockey games, remote refereeing in football games. Was that all stipulated to, or was there any evidence in the record to support that? No, that wasn't stipulated to. That was a discussion at oral argument, I believe. Let me correct you. But I believe it was a discussion at oral argument with regard to the abstract idea and with regard to the abstract idea of collecting, analyzing, and displaying information. Really, the idea of refereeing is exactly that, it's refereeing... But in electric power, it seems to me that you're arguing that electric power stands for the proposition that any time there's collecting, analyzing, and displaying data, that it's abstract. And I don't think that's what electric power stands for. Is that what you're arguing? Well, not any time. Not any time, but I think it was electric power that said we don't need to find the outer bounds of an abstract idea. And I feel like that's the same place here, is that this is so abstract. We often talk about something that's done within the human mind. And refereeing is exactly that, whether it's remote refereeing. And the referee here is contemplated as being a human, whether that's a remote referee or a referee on the football field. It's collecting information, what's going on in the play, analyzing that information, and then displaying the referee's decision, whether you throw a flag or whether it's a foot foul in a dart game. That's the abstract idea. And then when we move to step two of the Alice inquiry, as has been discussed, these are conventional components used in their conventional manner. And following Berkheimer, we look to the specification. There's no purported inventive concept, as in there's no technological solution. And even if there were, it's not included in the claims. And that's what we saw in Berkheimer, that there was this purported solution. Then this Court looked at the claims, and some claims survived, some did not, based upon whether or not that purported solution was incorporated into the claims. And if you have no further questions, I will yield my time. Thank you. Thank you. Mr. Rigg, you have a little over three minutes left. Thank you, Your Honor. Your Honor, I will go to what you were recently discussing. This case is not electric power. The claims in this case are not so broad as to cover, as the court in electric power said, they will monopolize every potential solution to the problem, i.e., any way of effectively monitoring multiple sources on a power grid. Our claims are much narrower. They require a specific machine, a specific dart machine, to be used in both the system claim and in the method claim. And that reference to the dart machines has specific elements that must be included. It can't apply to football. It can't apply to hockey. It can't apply to any other sport but darts. And it is only one way of doing remote refereeing. There are other ways out there. It is not limiting it. And I would cite you to a quote from Research Corporation Technologies v. Microsoft, 627 F. 3rd, 859. And the court was talking about it. It says, indeed, this court notes that inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act. That's what we did. We improved a dart machine so that you could do some remote refereeing. This is a dart machine that's in the marketplace. We made an improvement to it in the marketplace. So we think it's non-abstract. With respect to the judge relying on his own personal knowledge about football, hockey games, and baseball and using that to say remote refereeing is well understood, there was no evidence supporting that. There was no agreement on that. That was his own personal information that he relied on. And what's missing from that is we don't know how they do it in the NFL. We don't know when they started doing it. We don't know what information they get. There was nothing in there but the judge saying, I am equating this to what's going on in some different sport and saying, therefore, it's well known, routine, well understood. The one thing that's important to note about both all of the football, baseball, and hockey examples he gave is none of those remove the need to have a referee at the competition. In each of those cases, you have to have a referee at a competition. There's eight referees at a football game. I'm going to interrupt you and just say now, how do you respond to the fact that your claims don't require that limitation? They do reply to a remote refereeing center. But it doesn't say without having a person there at their site. In the ‑‑ I believe in the beginning of the patent, there is some reference to one of the purposes of the patent is to avoid having referees being present. It's not in the claim, but it's the basis for why the invention was created and what it was intended to do. I see my time is up. Unless there's more questions, I'm happy to answer. Thank you. Thank you, Your Honor. We're going to stand at recess briefly.